UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHN MICHAEL SOBLESKEY,

          Plaintiff,                   Case No. 1:20-cv-1244

v.                                          Honorable Robert J. Jonker

RANDEE REWERTS,

          Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County,

Michigan. The events about which he complains occurred at that facility. Plaintiff sues DRF Warden Randee Rewerts.

Plaintiff alleges that, on October 27, 2020, he discovered that a "hit" had been placed on him and that three different gangs and at least five or six prisoners were going to stab him if he remained housed in Level II.[1] Sometime between 3:00 and 4:30 p.m., Plaintiff told his unit officers that he needed to lock up, and he was taken to segregation and then to a Level-IV housing unit that had protective custody cells mixed with general population cells. One day later, prisoners reported that word had come from Level II that, if someone stabbed Plaintiff, they could go back to general population. Prisoners indicated that Plaintiff would be stabbed during showers or when he went to get his insulin shot. Plaintiff told the corrections officers, but nothing was done. At dinner, Plaintiff told officials that he was going to kill himself, and he was then taken to segregation.

Plaintiff was still in segregation on November 10, 2020. Resident Unit Manager (RUM) Beecher attempted to get Plaintiff to go back to the Level-IV housing unit with protective-custody cells. Plaintiff wrote to Defendant Warden Rewerts and Inspector Gallagher (not a Defendant), explaining his situation. The next day, Plaintiff wrote to SCC (Security Classification Committee) member Niemic. Plaintiff never received a response to any of his letters.

On November 23, 2020, Sergeant Winters came to Plaintiff's cell and informed him that he was being returned to the protective-custody cell. Plaintiff objected, but he agreed to go under threat of being gassed. He was placed in the same cell as prisoner Burnside, who also was forced out of segregation that day. Plaintiff soon began receiving death threats. On November 27,

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011).

2

prisoners in the general population cells began yelling, "[C]ell 45 we're going to stab you," and "[C]ell 45 we're going to kill you." (Compl., ECF No. 1, PageID.8.)

The following day, Plaintiff sent a kite to Defendant Warden Rewerts, explaining that there was a hit on him and that prisoners in the protective-custody unit were going to take that hit. Plaintiff complained that he was not safe in the unit. Later that same day, during second shift, prisoners began to say that the guards were going to open Plaintiff's cell door so that other prisoners could stab Plaintiff and his cellmate. Plaintiff told Correctional Officer Dill about the danger, but Dill did nothing. When Sergeant Winters came onto the unit, Plaintiff told Winters about the threat. Winters told Plaintiff that he was in a cell and would be fine, as the officers would not open the door.

During the early morning hours, between 2:30 and 3:30 a.m. on November 29, 2020, Plaintiff heard a cell door open on the upper level of the unit. Shortly thereafter, an unknown correctional officer said, "That's it. Let[']s blow this bitchup. He's got it coming. Fu** them both. At 4:00 am start waking guys up. At 4:40 am pop the cell doors." (*Id.*, PageID.8.) Fearing they would be stabbed, Plaintiff and his cellmate both told the correctional officer on the next round that they were going to kill themselves. Plaintiff was taken to segregation and then placed in a shower right next to the bubble where the correctional officers sat.

Plaintiff contends that he is in serious danger at the facility and that Defendant has not responded to his concerns, thereby purposefully and knowingly subjecting Plaintiff to a substantial risk of serious injury, in violation of the Eighth Amendment. Plaintiff seeks injunctive relief.

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

3

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Supervisory liability**

Plaintiff sues only Defendant Warden Rewerts. Plaintiff fails to make specific factual allegations against Defendant Rewerts, other than his claim that Defendant Rewerts failed to respond to his letters and, arguably, failed to supervise his subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Rewerts engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim.

IV. **Pending motions**

Plaintiff has two motions pending at this time: (1) a motion seeking a preliminary injunction (ECF No. 3); and (2) a motion to appoint counsel (ECF No. 7).

    A. **Preliminary injunction**

Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary

5

injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the

movant has shown a likelihood of success on the merits. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

In the instant case, Plaintiff cannot demonstrate entitlement to relief, because the Court has dismissed his complaint against Defendant Rewerts for failure to state a claim. He therefore cannot demonstrate any possibility, much less a likelihood, of success on the merits. As a consequence, Plaintiff's motion seeking preliminary injunctive relief (ECF No. 3) will be denied.

### B.     Appointment of counsel

Plaintiff seeks a court-appointed attorney. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court considered these factors before reviewing the complaint and determines that Plaintiff had demonstrated the ability to properly present his position and that no extraordinary circumstance existed to warrant the appointment of counsel. Moreover, in light of the Court's dismissal of his complaint, the request for appointment of counsel is now moot. Plaintiff's motion to appoint counsel (ECF No. 7) will be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court also will deny Plaintiff's pending motions.  (ECF Nos. 3, 7.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:     February 10, 2021            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE